# EXHIBIT A

# ADJUSTABLE RATE NOTE
(1-Year Treasury Index—Rate Caps—Fixed Rate Conversion Option)
(Assumable during Life of Loan unless Converted—Convertible 1st through 5th Change Date)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALSO CONTAINS AN OPTION TO CONVERT MY ADJUSTABLE INTEREST RATE TO A FIXED RATE.

December 21, 2006             Altoona                    Pennsylvania
[Date]                        [City]                     [State]

724 Skyline Dr
Dysart, PA 16636

[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $168,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Reliance Savings Bank d/b Reliance Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.7500**%. The interest rate I will pay will change in accordance with Sections 4 or 5 of this Note.

The interest rate required by this Section 2 and Sections 4 or 5 of this Note is the rate I will pay both before and after any default described in Section 8(B) of this Note.

3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on **August 01, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 01, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1119 Twelfth Street, Altoona, PA 16603**

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $880.28 . This amount may change.

MULTISTATE CONVERTIBLE/ADJUSTABLE RATE NOTE—1-Year Treasury (Assumable during Life of Loan) (Convertible 1st through 5th Change Date)—Single Family—Freddie Mac UNIFORM INSTRUMENT                        Form 5511 3/04

GreatDocs™
ITEM 4818L1 (0403)                        (Page 1 of 5 pages)                        To Order Call: 1-800-968-5775

(C) **Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 or 5 of this Note.

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   (A) **Change Dates**

   The interest rate I will pay may change on the first day of    **January 2008**    , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

   (B) **The Index**

   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

   If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) **Calculation of Changes**

   Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and Three Quarters** percentage point(s) (    **2.7500**%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   (D) **Limits on Interest Rate Changes**

   The interest rate I am required to pay at the first Change Date will not be greater than    **6.7500**% or less than    **2.7500**%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Two** percentage point(s) (    **2.0000**%) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    **10.7500**% (the "Maximum Rate").

   (E) **Effective Date of Changes**

   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   (F) **Notice of Changes**

   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **FIXED INTEREST RATE CONVERSION OPTION**

   (A) **Option to Convert to Fixed Rate**

   I have a Conversion Option which I can exercise unless I am in default or this Section 5(A) will not permit me to do so. The "Conversion Option" is my option to convert the interest rate I am required to pay by this Note from an adjustable rate with interest rate limits to the fixed rate calculated under Section 5(B) below.

   The conversion can only take place on a date(s) specified by the Note Holder during the period beginning on the first Change Date and ending on the fifth Change Date. Each date on which my adjustable interest rate can convert to the new fixed rate is called the "Conversion Date."

   If I want to exercise the Conversion Option, I must first meet certain conditions. Those conditions are that: (i) I must give the Note Holder notice that I want to do so; (ii) on the Conversion Date, I must not be in default under the Note or the Security Instrument; (iii) by a date specified by the Note Holder, I must pay the Note Holder a conversion fee of U.S. $**250.00**    ; and (iv) I must sign and give the Note Holder any documents the Note Holder requires to effect the conversion.

   (B) **Calculation of Fixed Rate**

   My new, fixed interest rate will be equal to the Federal Home Loan Mortgage Corporation's required net yield as of a date and time of day specified by the Note Holder for (i) if the original term of this Note is greater than 15 years, 30-year fixed rate mortgages covered by applicable 60-day mandatory delivery commitments, plus three-eighths of one percentage point (0.375%), or (ii) if the original term of this Note is 15 years or less, 15-year fixed rate mortgages covered by applicable

MULTISTATE CONVERTIBLE/ADJUSTABLE RATE NOTE—1-Year Treasury (Assumable during Life of Loan) (Convertible 1st through 5th Change Date)—Single Family—Freddie Mac UNIFORM INSTRUMENT                                                                                                        Form 5511 3/04

GreatDocs™
ITEM 4818L2 (0403)                                                        *(Page 2 of 5 pages)*                                                        To Order Call: 1-800-968-5775

60-day mandatory delivery commitments, plus three-eighths of one percentage point (0.375%). If this required net yield cannot be determined because the applicable commitments are not available, the Note Holder will determine my interest rate by using comparable information. My new rate calculated under this Section 5(B) will not be greater than the Maximum Rate stated in Section 4(D) above.

(C) **New Payment Amount and Effective Date**

If I choose to exercise the Conversion Option, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe on the Conversion Date in full on the Maturity Date at my new fixed interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment. Beginning with my first monthly payment after the Conversion Date, I will pay the new amount as my monthly payment until the Maturity Date.

6. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

7. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

8. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE CONVERTIBLE/ADJUSTABLE RATE NOTE—1-Year Treasury (Assumable during Life of Loan) (Convertible 1st through 5th Change Date)—Single Family—Freddie Mac UNIFORM INSTRUMENT
Form 5511 3/04

ITEM 4818L3 (0403)    (Page 3 of 5 pages)    GreatDocs™

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 12. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) UNTIL I EXERCISE MY CONVERSION OPTION UNDER THE CONDITIONS STATED IN SECTION 5 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE CONVERTIBLE/ADJUSTABLE RATE NOTE—1-Year Treasury (Assumable during Life of Loan) (Convertible 1st through 5th Change Date)—Single Family—Freddie Mac UNIFORM INSTRUMENT
Form 5511 3/04
GreatDocs™
To Order Call: 1-800-968-5775
ITEM 4818L4 (0403)    (Page 4 of 5 pages)

(B) IF I EXERCISE MY CONVERSION OPTION UNDER THE CONDITIONS STATED IN SECTION 5 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 12(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 5 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____[signature]_____ (Seal)
Michele J Barr     -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Pay to the order of _____
without recourse this _____ day of _____.

[Sign Original Only]

RELIANCE SAVINGS BANK
_____[signature]_____
Rebecca A Crilly
Asst. Vice-President

MULTISTATE CONVERTIBLE/ADJUSTABLE RATE NOTE—1-Year Treasury (Assumable during Life of Loan) (Convertible 1st through 5th Change Date)—Single Family—Freddie Mac UNIFORM INSTRUMENT
Form 5511 3/04

ITEM 4818L5 (0403)            *(Page 5 of 5 pages)*            GreatDocs™

*Reliance Bank 4*

Freddie Mac Loan ███

This document was prepared by: Dottie Dively

After recording please return to: Reliance Bank
PO Box 1968, Altoona, PA 16603

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS. ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED.

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Modification"), is effective _November 28_, 20_14_, between **Michele J. Barr** ("Borrower") and **Reliance Savings Bank t/a Reliance Bank** ("Lender"), and amends and supplements (1) the Note (the "Note") made by the Borrower, dated **December 21, 2006**, in the original principal sum of U.S. **$168,750.00**, and (2) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), recorded on **December 27, 2006** as Document No. **200625904**, of the Recorder of Deeds Records of **Blair County, Pennsylvania**. The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument (and defined in the Security Instrument as the "Property"), which is located at **724 Skyline Drive, Dysart, PA 16636-9500**. That real property is described as follows:

ALL THAT CERTAIN piece or parcel of land lying and being situate in the Township of Logan, County of Blair and Commonwealth of Pennsylvania, being more particularly bounded and described as follows:

BEGINNING at an iron pin located on the southern side of State Route 4012, said pin being the Northwest corner of the property herein described; thence along State Route 4012 North 45 degrees 34 minutes 50 seconds East a distance of 191.89 feet to an iron pin; thence along Parcel No. 5 South 28 degrees 32 minutes 28 seconds East a distance of 208.35 feet to an iron pin; thence along Parcel 6 South 45 degrees 34 minutes 50 seconds West a distance of 192.66 feet to an iron pin; thence along same North 28 degrees 20 minutes 15 seconds West a distance of 208.56 feet to an iron pin and the point of beginning.

CONTAINING 0.885 acres more or less and being Parcel No. 4 as shown on the Ingham Subdivision prepared by Clark C. Cree, Registered Professional Land Surveyor, dated August 3, 2000, and recorded January 16, 2001, in the Recorder's Office of Blair County, Pennsylvania, in Plot Book Volume 22, at Page 50.

ALSO, ALL that certain piece or parcel of land lying and being situate in the Township of Logan, County of Blair and Commonwealth of Pennsylvania, being more particularly bounded and described as follows:

BEGINNING at an iron pin located on the southern side of State Route 4012, said pin being the northwest corner of the property herein described; thence along

State Route 4012 North 45 degrees 34 minutes 50 seconds East a distance of 192.32 feet to an iron pin; thence along the line of land now or formerly of Neil Port South 28 degrees 32 minutes 28 seconds East a distance of 208.35 feet to an iron pin; thence along Parcel No. 6 South 45 degrees 34 minutes 50 seconds West a distance of 192.32 feet to an iron pin; thence along Parcel No. 4 North 28 degrees 32 minutes 28 seconds West a distance of 208.35 feet to an iron pin and the point of beginning.

CONTAINING .0885 acres more or less and being Parcel No.5 as shown on the Ingham Subdivision prepared by Clark C. Cree, registered Professional Land Surveyor, dated August 3, 2000, and recorded January 16, 2001, in the Recorder's Office of Blair County, Pennsylvania, in Plot Book Volume 22, at Page 50.

BEING the same premises the title to which became vested in the Mortgagors herein by Deed of Matthew C. Barr and Michele J. Revak, now Michel J. Barr, his wife, dated December 21, 2006, and intended to be recorded at and prior to the recording of this mortgage.

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification. In consideration of the agreements made in this Modification, and other good and valuable consideration which the parties agree they have received, the Borrower and Lender agree to modify the terms of the Note and Security Instrument as follows. The Borrower and the Lender agree that the provisions of this Modification supersede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1. The Borrower represents that the Borrower _X_ is, _____ is not, the occupant of the Property.
2. The Borrower acknowledges that interest has accrued but not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of **$6,452.86**, have been added to the indebtedness under the terms of the Note and Security Instrument. As of **December 1, 2014**, the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. **$159,441.16**.
3. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the Unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.495%**, beginning **December 1, 2014**. The Borrower promises to make monthly payments of principal and interest of U.S. **$932.89**, beginning on the **1st day of December, 2014**, and continuing thereafter on the same day of each succeeding month. If on **November 1, 2054** (the "Modified Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Modified Maturity Date. The Borrower will make such payments at **Reliance Bank, PO Box 1968, Altoona, PA 16603** or at such other place as the Lender may require.
4. Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

6. If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.

| [ ] | 1-4 Family Rider — Assignment of Rents |
| [ ] | Modification Due on Transfer Rider |
| [ ] | Bankruptcy Rider |
| [ ] | Other rider |

| Date | | |
|---|---|---|
| 11/28/14 | *signature* | – Borrower |
| 11/28/14 | *signature* | |
| Date 12/4/14 | Reliance Savings Bank t/a Reliance Bank | – Lender |
| | By: Dorothy L. Dudley, AVP | |

State of       Pennsylvania
County of      Blair

On this the 4th day of December, before me, Carolee Magnetti the undersigned officer, personally appeared Dorothy L Dively known to me (or satisfactorily proved) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/ she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Carolee Magnetti, Notary Public
City of Altoona, Blair County
My Commission Expires Aug. 14, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_Carolee Magnetti_

My commission expires: 8/14/16

After Recording Return To:
Reliance Savings Bank d/b Reliance Bank
1119 Twelfth Street
Altoona, PA 16603-1968

CERTIFICATE OF RESIDENCE, I, Dorothy L Dively, do hereby certify that the correct address of the within named lender is 1119 Twelfth Street, Altoona, PA 16603-1968

Witness my hand this 4th day of December.

_Dorothy L Dively_